808 P.2d 624

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Donald Wayne OSBORNE,**
**Defendant–Appellant.**

**No. 19533.**

Supreme Court of New Mexico.

April 4, 1991.

Rehearing Denied April 16, 1991.

Jacqueline Robins, Chief Public Defender, Amme M. Hogan, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

MONTGOMERY, Justice.

Defendant Osborne challenges his conviction of criminal sexual contact of a minor (CSCM). In response to questions certified by the court of appeals, we are called upon to determine:

(1) Whether under our CSCM statute, which defines the offense as "unlawfully and intentionally touching or applying force to the intimate parts of a minor other than one's spouse ...", NMSA 1978, § 30–9–13 (Cum.Supp.1990), "unlawfulness" is an element of the offense; and

(2) whether defendant's objection to a proposed instruction on unlawfulness as an element of the offense constituted waiver of any error based on the absence of an instruction to the jury on that issue.

We also address whether the absence of a jury instruction on unlawfulness, and consequent lack of any determination whether defendant's actions were justifiable or unlawful, renders the conviction so uncertain as to constitute fundamental error.

## I.

Mr. Osborne was convicted on September 20, 1989, of one count of CSCM for having touched the buttocks of M.C., a seven-year old child, while he was hugging her. The buttock is included as an "intimate part" under the statute. Defendant also pled guilty to a charge of failure to appear at the time of trial on this and another charge. He was sentenced to three years in prison and two years of parole for CSCM, and to eighteen months in prison and one year of parole for the failure to appear, the sentences to run consecutively.

Defendant lived with his girlfriend Glenda Bell and her seven-year old daughter B.M.G. at Bell's home during the time in which the illegal touching is claimed to have occurred. The alleged victim, M.C., was a close friend of B.M.G. and a frequent visitor and overnight guest at the home. M.C. testified that she was a daily visitor at B.M.G.'s home and that she spent every Friday night of the school year there.

Bell worked at a nearby power plant, usually on a late shift, and therefore was frequently not at home during the evening.

Defendant was often alone with the two girls while Bell was at work. He was unemployed during much of the time in question and spent much of his time around the house. He was the primary caregiver to B.M.G., doing the laundry, cooking, cleaning, and household maintenance.

M.C. claimed that defendant patted or rubbed her buttocks on one occasion when she was staying overnight with B.M.G. at the Bell residence. M.C. testified that the touching had occurred while she was hugging the defendant good-night, and that she was wearing panties and a long t-shirt at the time. The State presented no other witnesses or other evidence of the touching.

Defendant did not recall ever touching M.C.'s bottom and said that while it was possible he might have touched her bottom at some point, it would not have been in an inappropriate manner or with an inappropriate intent.

The State also presented evidence, through the testimony of M.C., that defendant had engaged in other improper sexual conduct toward the child which did not involve contact, but he was not charged with any of these other alleged acts. Defendant denied having committed any of these other acts alleged by M.C.

The issues in this case arise essentially from two sources: the CSCM statute and related uniform jury instruction (UJI), and defendant's objection at trial to an instruction proposed by the court that might have cured the problem. First, although the statute provides that the prohibited touching must be committed both "unlawfully and intentionally," the uniform jury instruction given in this case contains no reference to the term "unlawfully."[1] SCRA 1986, 14–925; *see* committee commentary to SCRA 1986, 14–921 (CSCM statute "requires that the sexual contact be both unlawful and intentional"). The instruction states only that to find the defendant guilty of criminal sexual contact of a child under the age of thirteen, the state must prove beyond a reasonable doubt that:

1. The defendant touched or applied force to the [intimate part] of [the victim];
2. [The victim] was 12 years of age or younger;
3. This happened in New Mexico on or about [date].

SCRA 1986, 14–925.

■ The trial judge, believing that "unlawfulness" was an element of the offense, was concerned about the absence of a UJI instruction on the unlawfulness of the touching. Our rules require the court to instruct the jury upon "all questions of law essential for a conviction of any crime submitted to the jury," SCRA 1986, 5–608(A), and we have held that the failure of the court to instruct the jury on the essential elements of a crime constitutes fundamental or jurisdictional error. *See Jackson v. State*, 100 N.M. 487, 672 P.2d 660 (1983); *State v. Gunzelman*, 85 N.M. 295, 512 P.2d 55 (1973). The trial judge also expressed concern that the CSCM statute may be unconstitutionally vague because it provides no guidance as to the circumstances under which a touching is "unlawful," and that the statute therefore may not provide citizens with adequate notice as to what kind of conduct is prohibited. Defendant initially asserted the unconstitutionality of the statute on grounds of vagueness and overbreadth as a principal defense in a pretrial motion to dismiss. Although the court denied the motion, the judge later said that the problem with the statute "became more apparent to the Court when jury instructions were being settled."

To correct what he thus perceived as a potentially critical shortcoming in the uniform jury instruction, the trial judge proposed, on his own motion, an additional instruction framing "unlawfulness" as an element of the offense and providing a definition of the term. The proposed instruction read:

---

1. The element of intent is covered by the uniform jury instruction on general intent, SCRA 1986, 14–141, which was given in this case.

In addition to the other elements of Criminal Sexual Contact of a Minor, the State must prove beyond a reasonable doubt that the behavior was unlawful. For the behavior to be unlawful it may be otherwise identical to lawful behavior, but inappropriate considering the sex, age and relationship of the participants, the manner of the touching, the time and place of occurrence and the surrounding circumstances.

Both parties objected to the proposed instruction. The State objected, fearing reversible error for failure to use the standard jury instruction. *See State v. Jackson*, 99 N.M. 478, 660 P.2d 120 (Ct.App.) (error to alter uniform jury instruction on the elements of a crime), *rev'd on other grounds*, 100 N.M. 487, 672 P.2d 660 (1983).

Defendant also objected to the instruction, thus giving rise to the second principal issue in this case, waiver. Defense counsel apparently believed that in the event of a conviction, defendant would be held on appeal to have waived his claim that the statute was unconstitutionally vague and overbroad if he acceded to the judge's corrective instruction. Given the dual objections to the proposed instruction on unlawfulness, the court, despite its concern about the failings of the uniform instruction, declined on its own initiative to give the instruction.

While defendant's appeal was pending in the court of appeals, this Court addressed the facial constitutionality of the CSCM statute in *State v. Pierce*, 110 N.M. 76, 792 P.2d 408 (1990). We determined that the CSCM statute, and its companion statute on criminal sexual penetration of a minor (CSPM), were not unconstitutionally vague or overbroad, noting that persons of ordinary intelligence could easily determine whether their conduct fell within the class of acts prohibited by the statute and that the statutes do not encourage arbitrary or discriminatory prosecution. *Id.* at 83, 792 P.2d at 415. This holding was premised, at least in part, on our determination that

the CSPM and CSCM statutes specifically limit the application of such offenses to instances wherein defendant's conduct in touching or penetrating the child is "unlawful" or "unlawfully" committed.... Neither CSPM nor CSCM prohibit the touching or penetration of the intimate parts of a minor for purposes of providing reasonable medical treatment to a child, nor do they criminalize nonabusive parental or custodial care.

*Id.* at 80, 792 P.2d at 412.

The court of appeals read this statement in *Pierce* as an apparent recognition that the CSCM statute makes "unlawfulness" an essential element of the offense of CSCM. However, the court recognized that it lacks the authority to declare insufficient a uniform jury instruction adopted by this Court. *State v. Chavez*, 101 N.M. 136, 139, 679 P.2d 804, 807 (1984). In order to examine the sufficiency of the instruction on the offense of CSCM, and to reconcile what it believed to be conflicting rulings from this Court on the issue of waiver of error in jury instructions, the court of appeals certified to us the two questions stated at the beginning of this opinion.

## II.

The state maintains that use of the term "unlawfully" in the CSCM statute simply establishes an exception or defense of "lawfulness" to the described offense, providing the defendant with an opportunity to introduce evidence showing that his actions were within the scope of lawful activities such as routine child care. *See State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977) (when statute creating offense includes an exception, the prosecution need not negate the exception; rather defendant must prove that he comes within it as a matter of defense). After an analysis of the CSCM statute, however, we here confirm what we implicitly recognized in *Pierce*—that unlawfulness is an essential element of the offense of CSCM as defined by our legislature.

In determining what is or is not an essential element of an offense, we begin with the language of the statute itself, *see Smith v. State*, 89 N.M. 770, 774, 558 P.2d 39, 43 (1976), seeking of course to give

effect to the intent of the legislature, *Rutledge v. Fort*, 104 N.M. 7, 9, 715 P.2d 455, 457 (1986).

Contrary to the State's assertions, the plain language of the statute simply does not set apart "lawful" touchings as an exception to the statute's proscriptions. The CSCM statute forbids "unlawfully *and* intentionally" (emphasis added) touching a minor's intimate parts. It is beyond dispute that the statute requires the state to prove, as an essential element of the offense, that the touching was done intentionally. It strains any ordinary reading of the conjunctive phrase "unlawfully and intentionally touching" to interpret it as requiring the term "unlawfully" be given legal significance different from that of its companion term. The language of the statute itself therefore suggests that the legislature intended to make unlawfulness an element of the crime rather than lawfulness a defense. *See State v. Pedroncelli*, 100 N.M. 678, 681, 675 P.2d 127, 130 (1984) (legislative intent determined primarily by language of statute itself). As the committee commentary to the CSCM instructions states, the CSCM statute "requires that the sexual contact be *both* unlawful and intentional." SCRA 1986, 14–921 committee commentary (emphasis added).

We have found no indication of express legislative intent as to whether unlawfulness was meant to be treated as an element of the offense or its opposite as a defense. It is clear, however, that the legislature did not intend to criminalize innocent behavior such as "the touching * * * of the intimate parts of a minor for purposes of providing reasonable medical treatment to a child * * * [or] nonabusive parental or custodial care." *Pierce*, 110 N.M. at 80, 792 P.2d at 412.

A reading of the statute as criminalizing solely "intentional" touchings, without regard to whether they were also "unlawful," would permit prosecution of individuals engaging in just such innocent conduct. Such a construction would authorize the state, for instance, to arrest at the behest of an estranged spouse a parent who touched an intimate part of his or her child in the course of ordinary parental care or affection and would require the parent to stand trial before the court could consider the lawfulness of the parent's actions. The mere allegation of a volitional touching of a child's intimate parts alone would be sufficient to withstand the parent's, or any other accused's, motion for directed verdict. This Court will not sanction an interpretation of a statute which would allow the state to impose such unjustifiable hardships upon presumptively innocent defendants. *See State v. Santillanes*, 99 N.M. 89, 90, 654 P.2d 542, 543 (1982).

Another important consideration, besides interpreting the statute standing alone, is the necessity of remaining consistent with our treatment of the statutory term "unlawful" in other criminal jury instructions adopted by this Court. Contrary to the State's assertions, our own review of a number of such instructions, which were called to our attention by the State itself, reveals that our UJI–Criminal typically treat the term as an element of the offense, rather than merely as language authorizing a defense.

It is true, as the State argues, that none of these instructions requires an explicit finding by the trier of fact that the defendant's conduct was "unlawful." However, as the committee commentary to the uniform instruction on the crime of assault (SCRA 1986, 14–301) indicates, the uniform instructions typically address the element of unlawfulness by an instruction which describes the act, usually in terms of the impermissible manner in which the act is perpetrated rather than in terms of an explicit finding of unlawfulness. We believe these instructions, requiring a finding which describes the impermissible nature of the act, adequately differentiate lawful from unlawful conduct.

NMSA 1978, Section 30–3–1 (Repl.Pamp. 1984), defines assault as "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." Referring to the corresponding instruction, the committee commentary states:

Following the general pattern of UJI Criminal, the jury is not told that the attempted application of force must be done unlawfully. The concept of unlawfulness is intended to be covered by the description of the act, i.e., when done in a rude, angry or insolent manner. SCRA 1986, 14–301 committee commentary.

The instructions for the crime of battery address the statutory term "unlawful" in the same manner. NMSA 1978, Section 30–3–4 (Repl.Pamp.1984), defines battery as the "unlawful, intentional touching or application of force to the person of another...." The committee commentary to this section explicitly refers to unlawfulness as a "statutory element" and notes that this element is covered by the instruction, identical to that in the instructions on assault, requiring that "[t]he defendant acted in a rude, insolent or angry manner." SCRA 1986, 14–320 committee commentary.

Other instructions similarly cover the statutory element of unlawfulness by provisions relating to the manner of the offense. Kidnapping is defined by NMSA 1978, Section 30–4–1 (Repl.Pamp.1984), as the "unlawful taking, restraining or confining of a person by force or deception * * *." Instructions for the offense require that defendant be found to have restrained or confined victim by force or deception, SCRA 1986, 14–403, –404, or additionally to have inflicted great bodily harm on the victim, SCRA 1986, 14–404.

Finally, the related offense of criminal sexual penetration is defined in NMSA 1978, Section 30–9–11 (Cum.Supp.1990), as the "unlawful and intentional causing of a person, other than one's spouse, to engage in sexual intercourse * * *." The UJI committee believed that the legislature intended the terms "unlawful and intentional" to apply to both types of sexual penetration described in the statute (sex acts and penetration by an object). SCRA 1986, 14–941 committee commentary. Again, instructions on the offense appear to cover the element of "unlawfulness" by requiring findings as to the manner in which the act was perpetrated. *See* SCRA 1986, 14–941, –946, –950, –958 (use of physical force or violence); 14–942, –947, –951, –959 (threats of force or violence); 14–943, –948, –952, –960 (victim physically or mentally unable to consent); 14–944, –949, –953, –956, –961 (any of the above circumstances); 14–945 (person in position of authority, victim 13–16 years old); 14–954 (during the commission of a felony); 14–955 (armed with a deadly weapon).

We recognize that this Court has previously defined the term "unlawful" appearing in criminal statutes as meaning "without excuse or justification." *See State v. Larson,* 94 N.M. 795, 617 P.2d 1310 (1980); *Territory v. Gonzales,* 14 N.M. 31, 89 P. 250 (1907); *Territory v. Anderson,* 4 N.M. 213, 13 P. 21 (1887). Indeed, in *Pierce* we specifically stated, relying on these cases, that in the CSCM and CSPM statutes "[t]he terms 'unlawful' or 'unlawfully' limit the scope of prohibited conduct to those acts that are without legal justification or excuse." 110 N.M. at 80, 792 P.2d at 412. As the State points out, although our homicide statute defines homicide as the killing of another human being "without lawful justification or excuse"—the equivalent of "unlawfully"—this Court has held that the phrase "without justification or excuse" in the homicide statute does not create an element of the crime which must be proven by the prosecution. *State v. Noble,* 90 N.M. 360, 364, 563 P.2d 1153, 1157 (1977). Rather, we held, "excuse or justification may be raised as a defense" when the evidence permits. *Id.* Consistency with our own definition of the term "unlawful," the State suggests, requires us similarly to hold that the issue of lawfulness must be raised as a defense to CSCM.

We do not believe, however, that our definition of unlawfulness in *Pierce* and our holding in *Noble* mandate a holding that the term "unlawfully" in the CSCM statute is not an element of the offense. First, such a holding would be inconsistent with *Pierce* itself, in which we indicated that the legislature set out unlawfulness as a distinct component of the offenses described in the CSCM and CSPM statutes:

"[T]he CSCM and CSPM statutes specifically limit the application of such offenses to instances wherein defendant's conduct in touching or penetrating the child is 'unlawful' or 'unlawfully' committed." 110 N.M. at 80, 792 P.2d at 412. "We interpret * * * the plain language of the statute to indicate a legislative intent to proscribe conduct involving the *'unlawful'* penetration of, or contact with, the 'intimate parts' of another. A person who *unlawfully and intentionally* penetrates the genital or anal openings of a child has committed CSPM." *Id.* at 83, 792 P.2d at 415 (emphasis added).

Second, in *Noble* we supported our conclusion that the absence of justification was not an element of homicide by noting, "Every killing of a person by another is presumed to be unlawful, and only when it can be shown to be excusable or justifiable will it be held otherwise." 90 N.M. at 364, 563 P.2d at 1157. The same rationale for requiring the defendant to establish excuse or justification does not apply in the present case. It cannot be said that every touching of the intimate parts of a minor may be presumed to be unlawful. There are any number of circumstances where such a touching is not merely "excusable or justifiable" but entirely innocent, such as a touching for the purpose of providing reasonable medical treatment, nonabusive parental or custodial care, or, in some circumstances, parental or custodial affection. The necessity of establishing an excuse or justification for an act should not be imposed upon a defendant until the state has established that conduct has occurred which, under common standards of law and morality, may be presumed criminal. *See generally* W. LaFave & A. Scott, *Handbook on Criminal Law* § 21 (1972) (due process and statutory presumptions, defenses, and exceptions).

Finally, proof that an act was committed "unlawfully" or "without justification or excuse" may be made by proof of the impermissible nature of defendant's conduct in connection with the other elements of the offense. Our holding will therefore not require the state to prove the absence of justification or excuse and consequently prove a negative. As with other instructions addressing the statutory element of unlawfulness discussed above, the element of unlawfulness in the CSCM statute may be addressed by a description of the manner in which the act was perpetrated. This can be accomplished by an additional instruction requiring the jury to find that the defendant acted in a manner calculated to arouse or gratify sexual desire, or which otherwise intruded upon the child's bodily integrity or personal safety. *See Pierce*, 110 N.M. at 80, 82, 792 P.2d at 412, 414. Proof of the wrongful manner in which the act was perpetrated, regardless of the actor's specific intent, will be sufficient to establish that the act was performed "unlawfully," or "without justification or excuse," as an element of the offense. This of course does not preclude a defendant from establishing, as under *Noble*, an excuse or justification for his actions under any of the traditional affirmative defenses which may apply, such as duress or insanity.

We recognize that in the uniform instruction on general criminal intent in a CSCM case the jury is told that the state must prove beyond a reasonable doubt that "the defendant acted intentionally when he committed the crime," and that "[a] person acts intentionally when he purposely does an act which the law declares to be a crime." SCRA 1986, 14–141. The jury was so informed in this case. The instruction does not suffice, however, to cover the requirement that the jury find that the defendant acted unlawfully. It would have been reasonable for the jury to conclude in the present case, and it may well have concluded, that under the uniform instruction on CSCM the law declares the mere intentional touching of the intimate areas of a child's body to be a crime. Rather, as we have determined above, the law declares such intentional contact to be a crime only when perpetrated in an unlawful manner.

■ Based on our determination, we suggest the following as a suitable instruction:

In addition to the other elements of Criminal Sexual Contact of a Minor, the State must prove beyond a reasonable doubt that the behavior was unlawful. For the behavior to have been unlawful it must have been done in a manner calculated to arouse or gratify sexual desire, or otherwise to intrude upon the bodily integrity or personal safety of [the victim]. Criminal Sexual Contact of a Minor does not include a touching for purposes of [reasonable medical treatment or] nonabusive [parental or] custodial child care.

See Pierce, 110 N.M. at 82, 792 P.2d at 414.[2]

We hold that by defining CSCM as "unlawfully and intentionally" touching a child's intimate parts the legislature properly intended that the state must establish the unlawfulness of the touching as a distinct element of the offense.

### III.

The court of appeals also certified the question whether defendant waived any claim of error by objecting to the trial judge's proposed instruction, which would have defined the term "unlawfully" and established unlawfulness as an element of the offense.

The court of appeals believed that two separate lines of authority relating to waiver, each leading to an opposite result, could apply. On the one hand, we have consistently held that a trial court's failure properly to instruct on all of the essential elements of a crime constitutes fundamental —or, as it is frequently called, "jurisdictional"—error requiring reversal. See,

e.g., Jackson v. State, 100 N.M. 487, 672 P.2d 660 (1983) (fundamental error); Ortiz v. State, 106 N.M. 695, 749 P.2d 80 (1988) (jurisdictional error).

On the other hand, we have also indicated that when a defendant fails to preserve an objection to the jury instructions, or is responsible for any error in the instructions, the defendant may be held to have waived any error. State v. Clark, 108 N.M. 288, 772 P.2d 322 (1989) (doctrine of fundamental error has no application in cases where the defendant by his own actions created the error), cert. denied, —— U.S. ——, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989); State v. Boeglin, 105 N.M. 247, 731 P.2d 943 (1987) (defendant cannot be heard to complain if the trial court instructed the jury as he desired); State v. McCrary, 100 N.M. 671, 675 P.2d 120 (1984) (by objecting to proposed instruction, defendant waived any error that might have occurred).

Initially, we believe the issue may be resolved simply by resort to our Rules of Criminal Procedure. As noted above, Rule 5–608(A) requires the trial court to instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury. This rule requires the court to instruct on all the essential elements of a crime. See State v. Bell, 90 N.M. 134, 140, 560 P.2d 925, 931 (1977). The rule goes on to provide in Paragraph D that to preserve a claim of error in the charge, a defendant must properly object to the given instructions or tender a correct written instruction, except as to matters upon which the trial court has a duty to instruct under Paragraph A.[3] Thus, our rules explicitly

**2.** This formulation, we believe, is preferable to the instruction initially proposed by the trial court in this case, which focused on the "inappropriate[ness]" of the defendant's behavior. The bracketed phrases in the suggested instruction, perhaps applicable in other cases, would not be given in this case since there is no evidence to which they would apply. See SCRA 1986, Uniform Jury Instructions—Criminal, General Use Note (when instructions contain alternative provisions, only the alternative supported by the evidence in the case may be used). By suggesting this instruction, we do not mean to preclude the court and the parties from agreeing to still another formulation, so long as

the definition of "unlawfulness" as set out in this opinion is preserved. Nor do we mean to deter the UJI–Criminal Committee from proposing its own instruction, based on the principles set out in this opinion and in Pierce.

**3.** The relevant portions of Rule 5–608 provide:
   A. *Required instructions.* The court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury.
      ....
   D. *Objections.* *Except as provided in Paragraph A of this rule,* for the preservation of error in the charge, objection to any instruc-

except from the preservation requirement questions involving the failure properly to instruct upon the essential elements of a crime.

■ However, in order to resolve the conflict perceived by the court of appeals in decisions relating to waiver of claims of error in jury instructions, we address this issue under the rules set out in those decisions. Having determined that unlawfulness is an essential element of the offense of CSCM, we need look only to the first line of authority, cited above, which correctly holds that the failure to instruct the jury on the essential elements of an offense constitutes fundamental error. Where fundamental error is involved, it is irrelevant that the defendant was responsible for the error by failing to object to an inadequate instruction or, as occurred in this case, by objecting to an instruction which might have cured the defect in the charge to the jury. As we said in *State v. Clark,* 108 N.M. at 296, 772 P.2d at 330 (citations omitted), "An exception to the general rule barring review of questions not properly preserved below * * * applies in cases which involve fundamental error. Fundamental error cannot be waived." *See also* SCRA 1986, 12–216(B) (establishing exception to rule barring review of questions not properly preserved in the district court for questions involving jurisdictional or fundamental error).

In *Clark,* however, we also said that the doctrine of fundamental error "has no application in cases where the defendant by his own actions created the error, where to invoke the doctrine would contravene that which the doctrine seeks to protect, namely, the orderly and equitable administration of justice." *Id.* at 298, 772 P.2d at 322. This dictum could be read as overruling cases which have found fundamental error where the defendant has been responsible in some way for the lack of a proper instruction on an essential element of the crime. *See, e.g., Jackson,* 100 N.M. at 489, 672 P.2d at 662 (failure to tender correct

instruction); *State v. Buhr,* 82 N.M. 371, 372, 482 P.2d 74, 75 (Ct.App.1971) (failure to object to incomplete instruction).

Such a reading would be incorrect. The dictum in *Clark* has no application where the error involves the absence of a jury instruction on an essential element of a crime. First, although a defendant may have contributed to the error by his own failures at trial, the defendant may not be held to have "created" the error. As we have indicated above, it is the duty of the court, not the defendant, to instruct the jury on the essential elements of a crime. SCRA 1986, 5–608; *State v. Bender,* 91 N.M. 670, 671, 579 P.2d 796, 797 (1978) (rule requires trial court to instruct on law essential for conviction even if no requested instruction tendered). Second, it simply does not contravene the "orderly and equitable administration of justice" to ensure that the state has met its burden of proving each of the essential elements of a crime required for conviction. On the contrary, the orderly and equitable administration of justice *requires* that we correct any such error notwithstanding the defendant's responsibility for or complicity in the error. *Buhr,* 82 N.M. at 372, 482 P.2d at 75.

■ We believe, moreover, that application of the fundamental error rule is appropriate under the facts of this case. The doctrine of fundamental error, even though it applies "only under exceptional circumstances," does apply "to prevent a miscarriage of justice." *Clark,* 108 N.M. at 297, 772 P.2d at 331. Fundamental error may be resorted to if the question of guilt "is so doubtful that it would shock the conscience to permit the conviction to stand," *State v. Rogers,* 80 N.M. 230, 232, 453 P.2d 593, 595 (1969), or if "substantial justice" has not been done, *Buhr,* 82 N.M. at 372, 482 P.2d at 75. In *Buhr,* the defendant was convicted of second degree murder, which required premeditation, under an instruction which left uncertainty as to whether the jury was required to find such premeditation. The court of appeals stated, "We fail

tion given must be sufficient to alert the mind of the court to the claimed vice therein, or in case of failure to instruct on any issue, a

correct written instruction must be tendered before the jury is instructed. [Emphasis added.]

to see how there is substantial justice in affirming a conviction when we have no way of knowing, because of an erroneous instruction, whether the conviction was or was not on the basis the killing was premeditated." *Id.* In this case, we similarly have no way of knowing whether the conviction was or was not on the basis that the touching was done "unlawfully." The instructions failed to require the jury to resolve the issue, raised in the evidence at trial, of whether defendant's touching was done innocently as a mere affectionate pat or rub of M.C.'s bottom, or whether it was done in a sexual or other improper manner. Under these circumstances, to permit the conviction to stand would shock the conscience of this Court and constitute a clear miscarriage of justice.

Under our rules of criminal procedure and the doctrine of fundamental error, we hold that defendant did not waive his claim of error based on the absence of an instruction on an essential element of the offense of CSCM.

### IV.

 In *Territory v. Miera,* 1 N.M. 387 (1866), this Court was asked to determine whether a conviction for aggravated assault and battery could stand when the indictment failed to allege that the offense was committed "unlawfully," as the statutory definition of the offense appeared to require.[4] The statute at issue declared it an offense to "unlawfully assault or threaten" or "unlawfully strike or wound" another in a menacing manner. Revised Statutes and Laws of the Territory of New Mexico, ch. 55, § 11 (1865). Ruling that the indictment must include an allegation that the battery was committed unlawfully, the Court said:

> There are many strikings which are not unlawful, and so are not offenses which the laws punish; such as parents correcting their children, or an executive officer

executing the sentence of a court upon a person convicted of a crime....

By using the word "unlawfully" in the statute, the legislature intended to discriminate between acts of violence which may be lawful and those which are not.... The omission was a substantial omission, and the court below decided properly in arresting the judgment.

*Miera,* 1 N.M. at 388.

For the reasons set out above, we similarly believe the omission in the jury instructions in this case was substantial and therefore reverse the trial court's judgment, remanding the cause for a new trial consistent with this opinion.

IT IS SO ORDERED.

RANSOM and FRANCHINI, JJ., concur.

---

4. We have previously recognized that the analysis of the sufficiency of an indictment and that of a jury instruction are essentially identical. "The relationship between the sufficiency of the indictment and of the instruction is more than metaphoric. It is both direct and actual." *Bell,* 90 N.M. at 142, 560 P.2d at 933.