This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO.   29,101**

**PEDRO ARMENDARIZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Don Maddox, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

As officers attempted to serve a warrant at Pedro Armendariz's (Defendant) house, relating to their belief that he was a felon in possession of a firearm, Defendant opened fire. An armed stand-off ensued for about twenty-four hours. Defendant stands convicted of multiple counts of assault with intent to commit a violent felony upon a peace officer, aggravated assault, and aggravated assault against a peace officer.[1] He appeals his convictions.

We hold that the district court's failure to instruct the jury concerning the essential element of Defendant's awareness of his victims' status as peace officers with regard to those various counts charging assault on peace officers requires reversal of Defendant's convictions on those counts. Defendant's assertion on appeal that his counsel was ineffective for not arguing that his intoxication and the intoxication instruction that was given to the jury applied equally to this awareness element as it did to his intent to kill is rendered moot by our reversal of these convictions.

Defendant's claimed due process violation, resulting from the condemnation and destruction of his trailer by the Hobbs City Commission, fails, owing to his

---

[1]The enhancement of the sentences by the use of a firearm is not at issue in this case and is not mentioned further.

2

inability to adequately persuade us of the likely existence of the evidence that any evidence lost thereby would have been material to his defense or that he suffered prejudice by its destruction. We also determine that double jeopardy was avoided in this case by separating each count using the number of individual victims of assault as the proper unit of prosecution. We determine that substantial evidence supported those counts not reversed by this Opinion and that substantial evidence supports the reversed counts sufficiently to allow retrial as to them.

## I.     BACKGROUND

During the evening hours of February 7, 2006, police officers approached Defendant's trailer with a high-risk warrant to search the premises for firearms. The officers banged on the door and shouted "police, search warrant[,]" an announcement that was followed by an eruption of gunfire from within the trailer. The officers near the trailer took cover and began to direct instructions to both the cadre of officers present and the occupants of the trailer. Defendant's girlfriend left the trailer at some point and was escorted away by officers.

The officers began to shoot out street lights in the area and what to them looked like surveillance cameras feeding back to the trailer. A second volley of shots ensued. One or two more additional volleys were fired in the next few hours. Early in the morning of February 8, the New Mexico State Police responded to the scene. Two

armored personnel carriers (APC) arrived, one from Midland, Texas and another from Albuquerque.

Upon the APCs' arrival, one was used to bump the trailer to try to elicit a response. The other was used shortly thereafter to cut holes in the trailer's east and west sides and inject tear gas in an attempt to get Defendant to leave the trailer. Defendant responded by firing upon the APC. The APC then tore much of the south side off the trailer when it stalled. It sat where it was for about forty-five minutes and was fired upon by Defendant while the other APC deployed tear gas into the existing hole on the south side of the trailer. Defendant surrendered shortly thereafter.

## II.	DISCUSSION

### A.	Failure To Give Required Jury Instruction—Ineffective Assistance Issue

Knowledge that the victim of an assault is a peace officer is an essential element of all but one of the crimes with which Defendant is charged and had he requested such an instruction, he would have been entitled to have had it given. *Reese v. State*, 106 N.M. 498, 499-500, 745 P.2d 1146, 1147-48 (1987). This element is not included in any of the jury instructions concerning the elements of any count involving assault or battery upon a peace officer in this case. The State advises us that an instruction on this element was not required at the time of Defendant's trial, citing the direction of our Supreme Court to amend the Uniform Jury Instructions to "reflect the requisite

4

mental states" involved in the crime of aggravated battery of a police officer. *State v. Nozie*, 2009-NMSC-018, ¶ 31, 146 N.M. 142, 207 P.3d 1119. *Reese* says otherwise as the preceding paragraph in *Nozie* clearly recognized. *Nozie*, 2009-NMSC-018, ¶ 30. Here, the problem for Defendant is that had he objected to the lack of the essential element, it would have constituted per se reversible error. *State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245. Not having pointed out the defect in the instructions given in the trial and not having requested any instruction concerning the requisite knowledge or an alleged lack thereof on Defendant's part, Defendant must rely on either an argument of ineffective assistance or fundamental error and does so in this appeal. *State v. Barber*, 2004-NMSC-019, ¶ 20, 135 N.M. 621, 92 P.3d 633 ("[F]ailure to instruct the jury on an essential element, as opposed to a definition, ordinarily is fundamental error even when the defendant fails to object or offer a curative instruction.") In *Barber*, the Supreme Court cited its decision in *State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991), for the broadness with which fundamental error applies. *Barber*, 2004-NMSC-019, ¶ 20. *Osborne* is more to the point, stating that "although a defendant may have contributed to the error by his own failures at trial, the defendant may not be held to have 'created' the error. As we have indicated above, it is the duty of the court, not the defendant, to instruct the jury on the essential elements of a crime." 111 N.M. at 662, 808 P.2d at 632. In this case, the

jury was instructed that the victims of the various counts of assault and aggravated assault on peace officers were required to be officers, but not that Defendant was aware of their status as such. Therefore, we must evaluate whether the missing element caused such confusion that the jury could have convicted Defendant based upon a deficient understanding of the elements of the crime. *Barber*, 2004-NMSC-019, ¶ 25.

To fail to tell a jury the whole story by including the essential element of knowledge is to create the exact false impression corrected in our jurisprudence since *Reese*. It must be proven beyond a reasonable doubt that the victims were peace officers *and* Defendant knew they were. The instructions that were given all required a finding that the victims were peace officers without telling the jury that they must also find that Defendant knew them to be. Thus, the jury could conclude from the testimony that the victims were peace officers according to the definition contained in the proffered instruction without ever being required to evaluate evidence to determine whether Defendant had acquired this same essential awareness at the time. This is fundamental error and requires the reversal of Defendant's convictions on Counts 1 to 8 of Indictment 2007-39 and Counts 4 and 5 of Indictment 2007-348.[2]

Our last consideration in this regard is to determine whether there was sufficient

---

[2]Unaffected is the conviction on Count 11 of Case 039, which did not involve a peace officer.

evidence to convict Defendant under the erroneous jury instruction. *State v. Akers,* 2010-NMCA-103, ¶ 32, 149 N.M. 53, 243 P.3d 757. We hold that there was sufficient evidence based on (1) the shooting began at the time the officers knocked and announced themselves as the police; (2) trial testimony that each of the victims listed in these counts was a police officer; and (3) during the stand-off, Defendant repeatedly fired his rifle—a deadly weapon—in their direction, wounding two officers. Retrial of these counts is therefore not prohibited. *Id.*

Defense counsel did not argue at trial that the instruction on intoxication given the jury was as applicable to possibly negating Defendant's awareness that he was assaulting peace officers, as it was to negate the intent to kill necessary to the crime of aggravated assault on a peace officer with intent to commit a violent felony. This is the basis for Defendant's assertion of ineffective assistance of counsel. Given the lack of a request for the necessary instruction on awareness from defense counsel, not making the intoxication argument as to awareness of officer status possibly compounded Defendant's problem. However, reversal of these counts renders Defendant's argument as to ineffective assistance in this regard moot. Since retrial is permitted, opportunities exist for correcting past mistakes. We now attend to the remaining issues in the case.

**B.      Destruction of Evidence**

Defendant filed a demand for the preservation of tangible evidence on February 16, 2006, about a week after his arrest. It seeks the preservation of "tangible objects . . . found on [D]efendant or found by any search in any way related to this cause[,] . . . other tangible objects . . . intend[ed] to [be] offer[ed] into evidence, either by introduction of the actual objects, or by reference[,] including . . . photographs, video tapes[,] or film." The trailer and its contents were not specifically listed. Defendant does not appear to have taken any further action on this motion until a year later. Defendant's competency was not decided for another nine months following his motion in that regard, and he did not pursue any evidentiary concerns during that time. In the meantime, the Hobbs City Commission had undertaken the condemnation of Defendant's trailer and two other unrelated properties as hazards to public health and safety, setting a hearing for February 21, 2006. Notice of the hearing was published in the newspaper, but no direct notice of the matter was provided to Defendant or his attorney in the criminal case. Nothing indicates that Defendant or his counsel had any contact with the City Commission with regard to this condemnation.

Defendant's preliminary hearing was continued a number of times. It was not until February 26, 2007—a year after the incident—that defense counsel filed a demand for production of the "preserved crime scene, trailer house and curtilage . . . which were within the custody and control of the State[,] including panels off the

house trailer and travel trailer" for "testing by Defendant's forensic experts." This was followed by another demand for preservation of evidence, which did not specify the trailer or its contents. A deadline for the production of "[l]ab [r]eports, [s]cientific [a]nalysis[,] and [n]ames of any expert witnesses" was set for April 23, 2007, which was also the deadline for motions to be heard.

Throughout 2007, and into mid-2008, sparring occurred about discovery without any resolution by the district court. On June 11, 2007, at a status hearing, the State indicated that it did not know if any part of the trailer had been preserved. On June 22, defense counsel filed a motion to dismiss based on the State's alleged failure to preserve evidence, mentioning spoliation of evidence, but not specifically the trailer, and another motion on July 11, 2007, indicating that the State had still failed to disclose important evidence. Following a hearing on Defendant's motions in July 2007, the district court entered its written order on April 21, 2008, denying the motion to dismiss. Regarding the trailer, the district court found specifically that the State had not acted in bad faith in removing Defendant's trailer, that both Defendant and his counsel had adequate notice of its impending demolition from publication in the paper, and that it was taken and demolished based upon the City Commission's findings that it was a public hazard. The court also found that Defendant and his trailer had not been singled out by the State or the City Commission. A document

9

from that meeting that was identified and admitted as evidence by the defense, as well as two photographs offered by the State, which showed the fact that after the conflagration with Defendant, the south and west walls of his trailer had been destroyed. These exhibits are not part of the record before us. At the continuation of the motion hearing in April 2008, the court read from the City Commission's findings that the trailer was "ruined, damaged, and dilapidated." We must evaluate two issues posed by Defendant. The first concerns the removal and destruction of his trailer, and the second concerns whether the loss of evidence Defendant claims to have occurred warrants our finding a due process violation.

Our review of the district court's denial of a motion for sanctions based upon lost evidence is for an abuse of discretion. *State v. Duarte*, 2007-NMCA-012, ¶ 3, 140 N.M. 930, 149 P.3d 1027. We apply "a three-part test to determine whether deprivation of evidence [by the State constitutes] reversible error[,]" evaluating whether (1) "[t]he [s]tate either breached some duty or intentionally deprived the defendant of evidence;" (2) "[t]he improperly suppressed evidence [was] material; and" (3) "[t]he suppression of this evidence prejudiced the defendant." *State v. Chouinard*, 96 N.M. 658, 661, 634 P.2d 680, 683 (1981) (internal quotation marks and citation omitted). Defendant points us to *State v. Pacheco* for the general proposition that "[i]t is generally understood that the [s]tate has a duty to preserve

evidence obtained during the investigation of a crime." 2008-NMCA-131, ¶ 28, 145 N.M. 40, 193 P.3d 587. The state does not dispute its general duty, but the defendant bears the burden of showing materiality and prejudice before sanctions are appropriate. *Id.* ¶ 30. Irrespective of the duty to preserve the evidence, the defendant cannot prevail on his claim for sanctions absent proving materiality and prejudice. *State v. Sanchez*, 1999-NMCA-004, ¶ 7, 126 N.M. 559, 972 P.2d 1150.

*People v. Kladis*, 934 N.E.2d 58 (Ill. App. Ct. 2010) is cited for the proposition that informing the State of his demand to preserve evidence gives rise to the obligation of the State to preserve it. Defendant's reliance is misplaced. In resolving the issue of a missing DUI video in *Kladis*, the Illinois Court of Appeals relied on *Illinois v. Fisher*, 540 U.S. 544 (2004). In that case, the United States Supreme Court found no due process violation for destroying merely "potentially useful," but not "material exculpatory" evidence in the absence of the state's bad faith. *Id.* at 548. In *Kladis*, without bad faith, the court found a discovery violation, not a due process problem. 934 N.E.2d at 63-64. Defendant asserts no bad faith on the part of the State, but rather that it breached a duty to preserve evidence. The district court did not address the matter of any duty to preserve evidence, but rather held that there was no bad faith attending the destruction of the trailer. The district court did find "[t]hat the Public

11

Defender's Office and . . . [D]efendant [were] placed on adequate notice by the City of Hobbs that . . . [D]efendant's residence was to be demolished."

Defendant filed his motion to preserve evidence, but not specifically mentioning the trailer itself, within days of being arrested. Defendant's trailer had endured damage of two walls being ripped from it and had been heavily saturated with tear gas. After the two-day stand-off, the trailer was left open to the elements. Approximately two weeks after the incident, the trailer was condemned and removed from its lot as a public nuisance by order of the Hobbs City Commission. All parties assume that it was then demolished. The only documentation in the record of the City Commission's process in making its decision is contained in testimony by Chief Gonzales of the Hobbs Police from the July 2007 hearing and comments made then and thereafter by the district judge. From Chief Gonzales's testimony in the April hearing, he did not take any action with regard to the trailer. And though he had discussed with an agent of the state police a procedure for condemnation of buildings as health or safety hazards, he was unaware as to how the condemnation process was initiated. Additionally, the State asserts without contradiction that the trailer was available to Defendant for two weeks and that despite notice of its impending destruction, Defendant did not seek to inspect the evidence, nor did he take any further action to ensure its preservation.

We accept as fact that Defendant was aware of the trailer's condition, namely, having had entire walls ripped from its frame before he exited from it. Testimony places him at one of the ripped walls, staring and shooting at one of the APCs. We have previously held that "[d]efendants must make an effort to discover or obtain evidence, which they are or should be aware of, in support of their defense." *State v. Laney*, 2003-NMCA-144, ¶ 28, 134 N.M. 648, 81 P.3d 591. Defendant's motion leads us to believe that, immediately following his arrest, defense counsel had some awareness that the need to pursue evidence in the case might be exigent. However, nowhere does Defendant demonstrate exercising the responsibility for pursuing evidence suggested by *Laney*. Rather, Defendant waited a year before pursuing any evidence by way of a subsequent motion. In light of the known condition of the trailer from which Defendant exited after two of its walls had been ripped from it, the publication of notice in the Hobbs newspaper and the awareness of the trailer's possible evidentiary value to the defense, we can find no abuse of discretion in the district court's finding no bad faith and that the defense was provided adequate notice of its impending destruction. We next turn to the issues of materiality and prejudice.

*Pacheco* is clear. "When evidence is lost in a way that does not involve bad faith, the defendant bears the burden of showing materiality and prejudice before sanctions are appropriate." 2008-NMCA-131, ¶ 30. In the absence of bad faith,

13

Defendant generally must pursue cross-examination at trial. "When the failure to gather evidence is merely negligent, an oversight, or done in good faith, sanctions are inappropriate, but the defendant can still examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's shortcomings against the standard of reasonable doubt." *State v. Ware*, 118 N.M. 319, 325-26, 881 P.2d 679, 685-86 (1994). This opportunity was specifically extended by the district court to the defense at the motion hearing.

In evaluating claims in which the failure to collect or preserve evidence from a crime scene is alleged to violate an accused's rights, we first look to Defendant's showing that the evidence is relevant, material, or important to the defense as opposed to extraneous or duplicative of other evidence. "The determination of evidence materiality is a question of law for the court." *Id.* at 325, 881 P.2d at 685. Our Supreme Court has held that "[e]vidence is material only if there is a reasonable probability that, had the evidence been [available] to the defense, the result of the proceeding would have been different." *Id.* (internal quotation marks and citations omitted). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted). "The importance of the lost evidence may be affected by the weight of other evidence presented, by the opportunity to cross-examine, by the defendant's use of the loss in

14

presenting the defense, and other considerations. The trial court is in the best position to evaluate these factors." *Chouinard*, 96 N.M. at 663, 634 P.2d at 685. We review the court's decision for an abuse of discretion. *Pacheco*, 2008-NMCA-131, ¶¶ 27, 28.

At the motion hearings in 2007, Defendant argued that it was his desire to closely examine the trailer and its parts for ballistic evidence concerning the direction of gunfire—inbound and outbound from the incident—and evidence concerning the different weapons employed by the police and Defendant. Despite conceding that some of what Defendant wanted to gather from the ballistic evidence was important, the district court, contrary to Defendant's contention, made no finding that it was material. At trial, a year later, Defendant sought to establish that he was so high on amphetamines during the course of the conflagration at his home that he was incapable of forming an intent to kill the officers. It is with this later assertion that he primarily approaches this Court now, urging that material evidence of his drug use and intoxication, and not the ballistics, was destroyed. Trying to establish the loss of evidence of his intoxication, he now asserts that it is "reasonable to assume" that had he been granted access to his trailer, by virtue of his familiarity with the premises, he could have recovered evidence of drug use—drugs, paraphernalia, or residue from

15

furniture or the walls—to support his claim. We disagree that this evidence would be material to his defense to a point that the verdict's integrity could be questioned.

Defendant asserts that, apart from his testimony, there was no corroboration of his drug use during the incident. Yet, he points out that his girlfriend testified to his contemporaneous drug use. Dr. Fink testified at trial that his claim of amphetamine intoxication was credible. Defendant believes this testimony corroborates his reason for "believing that a thorough search of the trailer would have returned evidence consistent with drug use and with [Defendant's] defense." The connection is minimal. If drugs were to be found in the wreckage, it is logical to conclude that Defendant neither consumed nor became intoxicated by them. Defendant does not make specific allegations as to what quantity of drugs or paraphernalia were originally to be found in his trailer, nor direct us to portions of the record below in which he argued the specific drug-related materiality of what might have existed had the defense searched the trailer. Nothing about found drugs could make it more or less likely that amphetamines in his system rendered him incapable of knowing that he was in a conflict with police officers or intending to kill them by shooting at them. In short, as Defendant frames it, drugs, residue, and paraphernalia would tend to show that he used drugs, a fact he testified to and was corroborated at trial by his girlfriend and Dr. Fink. All concerned with the case seem to take his drug use for granted, but use is not

evidence of intoxication. We cannot discern from Defendant's argument that the additional evidence he sought in this regard would have been material to his defense. Hence, we hold that the connection between the possibility of finding drugs and paraphernalia and proving any level of intoxication so as to support his defense is so tenuous as to demonstrate no prejudice to Defendant by their destruction had they existed at all.

Last, we note that Defendant's argument as to materiality at the motion hearings in the district court concentrated on preserving the parts of two trailers in the yard—the one in which he lived and the one behind in which the officers hid and took fire—so as to verify "the extent of the officers' assault" on Defendant, not the existence of enough drug-related evidence to show how intoxicated he had been. Defendant's contentions are that he might have been able to rebut the State's assertions that he was firing with assistance of the surveillance cameras on the property without which he did not otherwise have clear views of the officers, or could not hear them as they called to him. Again, Defendant relies on the likelihood that the trailer contained some material information regarding what was said or done at the scene. At the hearing, Defendant was accorded the ability to argue at trial what the destroyed trailer might have revealed. As with Defendant's argument regarding the possible existence of drug-related evidence, we are bereft of a way to assess

17

materiality under the quantum that requires Defendant to demonstrate what evidence likely existed, and how the existence of that evidence to be found in the trailer would probably change the result of the trial had it been produced. We hold that Defendant has failed to demonstrate that the destruction of the trailer deprived him of evidence material to his defense. We reject his argument that preservation of the trailer was required by due process.

**C.    Double Jeopardy**

Defendant maintains that his convictions are based upon unitary conduct and, as such, violate double jeopardy. We disagree. Despite the imperfect history of the trial witnesses, the evidence produced accounts of between four and nine volleys of shots by Defendant from within the trailer toward the officers assembled outside. We acknowledge that a unit-of-prosecution argument requires that we take in "the temporal proximity of the acts, the location of the victim during each act, the existence of an intervening event, the sequencing of the acts, the defendant's intent as shown by his conduct and statements, and the number of victims." *State v. Stone*, 2008-NMCA-062, ¶ 3, 144 N.M. 78, 183 P.3d 963. Defendant fired a number of volleys of shots through the twenty-four hour stand-off. There were multiple targets for his gunfire. We therefore cannot accept Defendant's argument that this case reflects a single course of conduct or, as he argues in his brief, one limited by the number of volleys

fired. The nature of assault offenses encapsulates their personal nature and the individual victim as the proper unit of prosecution.

Defendant maintains that he should be convicted according to the number of volleys fired, rather than the number of victims. We disagree. Defendant's argument skirts the fact that the number of victims is a "particularly significant indicator in determining whether acts are distinct." *State v. Bernal*, 2006-NMSC-050, ¶ 18, 140 N.M. 644, 146 P.3d 289. Most importantly, the statutes under which Defendant was charged evidence a legislative intent to make each victim the subject of a separate charge. Assault, including aggravated assault, is an offense committed against the person of another. Assault with intent to commit a felony upon a peace officer requires an assault on a peace officer with intent to kill that officer. NMSA 1978, Section 30-22-23 (1971). The interest protected by the assault statute is the mental harm to the victim caused by the threat of violence; the interest the battery statute protects is physical harm to the victim. *State v. Roper*, 2001-NMCA-093, ¶ 12, 131 N.M. 189, 34 P.3d 133. This plain language indicates to us that the Legislature intended to measure punishment by the number of individuals who were victims of the assault. "[A]ny unlawful act, threat[,] or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery" is the gravamen of assault. NMSA 1978, Section 30-3-1(B) (1963). We discern from

the emphasis on a single victim in the elements of assault—a person being in apprehension of harm—that multiplicity of counts can fairly rest on a multiplicity of contemporaneous victims, assuming the intent to kill further discriminates between the individual targets. It is apparent to us that each person who believed they were in danger from Defendant's indiscriminate gunfire is a separate victim of the crime. Double jeopardy is not offended by Defendant's convictions on the eight counts of assault with intent to commit a violent felony upon a peace officer. An offense arising from a single transaction causing harm to multiple victims is not the same in law or fact and can result in separate sentences. *Stone*, 2008-NMCA-062, ¶ 3. We hold that Defendant's convictions and sentences with regard to these eight counts did not offend double jeopardy. Similarly, the fact that Defendant shot at the APC that was occupied by two officers is similarly resolved. *Roper*, 2001-NMCA-093, ¶ 12 (holding that aiming a weapon at two persons constitutes two counts of aggravated assault). The last count of aggravated assault was against a person who was not a peace officer. A conviction for assault does not offend double jeopardy in that instance either. The purpose of the assault statutes, being the protection of individual persons, we view the appropriate unit of prosecution in this case as equal to the number of persons assaulted and find no double jeopardy violation.

**D.     Substantial Evidence Supports the Charges in the Indictment**

We have previously found no error in a prosecutor's argument that an intent to kill may be inferred from a defendant pointing a gun at a person and shooting it. *Id.* ¶ 23. "[T]he defendant's act of pointing a loaded weapon at the victim with the knowledge that it could fire would support an inference that the defendant intended to kill the victim or created a strong probability of death or great bodily harm." *State v. Demongey*, 2008-NMCA-066, ¶ 27, 144 N.M. 333, 187 P.3d 679 (citing *State v. Reed*, 2005-NMSC-031, ¶ 36, 138 N.M. 365, 120 P.3d 447). Since *Demongey* is clear that intent is something most generally inferred from the circumstances attending an incident, we look at the fact of multiple volleys fired at the officers, the presence of not less than forty spent shell casings that were not of police issue caliber in and around Defendant's trailer, the wounding of two officers, and point blank shooting at the two occupants of the APC as sufficient circumstances from which the fact finder could deduce Defendant's intent from his repeatedly firing his weapon in the direction of the officers. Such evidence was sufficiently substantial to support the conviction for assault with intent to kill in *State v. Highfield*, 113 N.M. 606, 609, 830 P.2d 158, 161 (Ct. App. 1992). Consequently, we hold that the "intent to kill" element was supported by substantial evidence. Similarly, letting loose with his first volley of shots upon the officers' announcing themselves and beating on his door, the length of the stand-off, and his directing fire to specific locations to which the officers had

21

retreated for cover, similarly stands as strong circumstantial evidence that Defendant knew he was facing a cadre of police officers sufficient to satisfy the knowledge element of his charges. *Akers*, 2010-NMCA-103, ¶ 35.

## III.    CONCLUSION

For the preceding reasons, we reverse Defendant's convictions on all counts, but Count XI of Case 2007-039, which did not allege an offense against a peace officer. We remand for a new trial on the remaining counts.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**