**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-103**

**Filing Date: September 27, 2010**

**Docket No. 28,674**

**STATE OF NEW MEXICO,**

       **Petitioner-Appellee,**

**v.**

**DARRELL AKERS,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Corey J. Thompson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}** Defendant appeals his conviction for resisting, evading, or obstructing an officer. *See* NMSA 1978, § 30-22-1(B) (1981). He raises three issues on appeal. We reverse and remand, holding that Defendant was entitled to a jury instruction requiring the State to prove that Defendant knew that the persons seeking to detain him were law enforcement officers.

**BACKGROUND**

1

**{2}**  Otero County Narcotics Enforcement Unit Agents were investigating potential drug manufacturing by following persons suspected of buying suspiciously large amounts of cold medication containing pseudoephedrine. The manager of an Albertsons grocery store alerted Agent Lee Wilder of potentially suspicious behavior exhibited by Defendant's son, Kevin, who was seen purchasing cold medication containing pseudoephedrine and who had been seen in the store a few weeks earlier for the same purpose. Wilder watched Kevin leave Albertsons and get into a truck driven by Defendant. He followed the truck to monitor any suspicious behavior.

**{3}**  Wilder alerted Agents John Anderson and Richard Henley, who began following Defendant and Kevin in their own vehicles. The agents were in plain clothes and driving unmarked vehicles. There was nothing about the make or model of the vehicles to suggest the agents were officers, and the vehicles were not equipped with flashing lights.

**{4}**  The agents followed Kevin and Defendant to another grocery store where Kevin walked into the aisle containing pseudoephedrine and then went into the bathroom; the agents were unable to determine if he purchased anything. After Kevin left that store, the agents continued to follow Defendant's truck while it stopped at a gas station and continued on. At trial, Wilder testified that he and the other agents did not originally plan to contact Defendant, but only to follow him.

**{5}**  Henley testified that at some point Defendant appeared to realize he was being followed, and he made a U-turn and pulled over facing oncoming traffic. Henley radioed this information to the two other agents, and he then drove by Defendant's truck. After passing Defendant's stopped truck, Henley made a U-turn and pulled up about fifty to sixty feet behind Defendant in an open area.

**{6}**  Wilder had also pulled over so that he was facing Defendant's truck, also approximately fifty to sixty feet away. Wilder opened the door to his vehicle, stepped outside, displayed his badge, and tried to communicate with Defendant and Kevin. He stated loudly his identification as an officer, said he wanted to talk to Defendant about the incident at Albertsons, and asked Defendant to please step out of the truck. He testified that, at this point, he did not have his gun out. He did not call for uniformed back-up because he did not, at that time, intend to perform a traffic stop or arrest Defendant; he only wanted to talk to Kevin and Defendant about his suspicions. Defendant eventually stuck his head out of the window of his truck and asked what was going on. Wilder again identified himself as an officer. He testified that he wondered why Defendant did not want to talk to him. Wilder did not consider Defendant to be under arrest.

**{7}**  Wilder testified that Defendant began creeping toward him, leaving ten to fifteen feet between Defendant's truck and Wilder's vehicle and causing him to question Defendant's intentions. Henley had previously radioed Wilder and Anderson that he saw an assault-type rifle on a gun rack in the back of Defendant's truck. Wilder testified that as Defendant's truck drew near, he did not see the rifle in the gun rack. He became increasingly nervous as

2

Defendant's truck drew nearer and continued to loudly identify himself as an officer and to hold his badge in the air, as well as requesting that Defendant show his hands.

**{8}** When Defendant failed to stop or to show his hands, Wilder drew his gun to show that he "meant business" and because he was afraid. He held his badge in one hand and the gun in his other hand yelling for Defendant to display his hands and telling him that he was under arrest.

**{9}** At some point, Defendant briefly pulled to a stop near Wilder's vehicle, but Defendant did not say anything; he just looked at Kevin. Wilder testified that, assuming Defendant was prepared to speak with him, he put his badge down and prepared to walk toward Defendant's truck when Defendant drove off.

**{10}** While Defendant was stopped, Henley took out his badge and gun, approached Defendant's truck from the rear passenger, opened the door, and told the occupants to show their hands. Defendant then started to accelerate and swerved his truck around Wilder's vehicle. As the truck sped off, Henley was thrown across the passenger seat into Kevin's lap. While the truck gained speed, Henley was thrown from the truck and struck his head on the ground. Wilder continued to pursue Defendant, and Defendant was stopped some distance down the road by Deputy Norbert Sanchez. Sanchez was in uniform with lights flashing.

**{11}** Defendant was initially charged with aggravated battery upon a peace officer; tampering with evidence; and resisting, evading, or obstructing an officer. *See* § 30-22-1; NMSA 1978, § 30-22-5 (2003); NMSA 1978, § 30-22-25 (1971). In the first trial, Defendant was acquitted of the tampering charge, but the jury hung on the remaining charges. A second trial resulted in convictions for aggravated assault upon a peace officer with a deadly weapon, a lesser-included offense to aggravated battery upon a peace officer, and resisting, evading, or obstructing an officer. *See* NMSA 1978, § 30-22-22(A)(1) (1971); § 30-22-25. This Court reversed the convictions in a memorandum opinion for failure to instruct the jury on Defendant's claim of self-defense and remanded for a new trial.

**{12}** Defendant was tried a third time and acquitted of aggravated assault upon a peace officer. He was convicted of resisting, evading, or obstructing an officer, and this appeal followed. Additional facts are discussed as relevant to Defendant's issues.

**JURY INSTRUCTIONS**

**{13}** Defendant claims that the district court erred in instructing the jury on the law regarding resisting, evading, and obstructing an officer because it refused to instruct the jury that Defendant needed to know that the persons pursuing him were law enforcement officers. "The propriety of jury instructions given or denied is a mixed question of law and fact" that we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996; *see State v. Nozie*, 2009-NMSC-018, ¶ 33, 146 N.M. 142, 207 P.3d 1119. "A defendant is entitled to an instruction on a theory of the case where the evidence supports the theory[, and f]ailure to give an instruction which is warranted by the evidence is not harmless error."

3

*Salazar*, 1997-NMSC-044, ¶ 50 (citations omitted).

**{14}** As previously discussed, Wilder and Henley were working undercover and driving unmarked vehicles, which did not have police lights and in no way indicated any affiliation with law enforcement. Both men admitted that they were wearing jeans and sweatshirts and did not want to be identified as officers. Furthermore, Wilder had long hair and earrings.

**{15}** Even though there was testimony that Wilder and Henley identified themselves as officers, there was ample evidence supporting Defendant's defense that he did not know that the persons pursuing him were officers including the agents' manner of dress and the unmarked character of their vehicles. *See State v. Romero*, 2009-NMCA-012, ¶ 22, 145 N.M. 594, 203 P.3d 125 (filed 2008) (stating that a defendant "is entitled to a jury instruction that supports his theory of the case, but only when that theory is supported by the evidence presented at trial" (internal quotation marks and citation omitted)). Defendant's testimony, if believed, would establish that he did not know he was being pursued by law enforcement and he acted in a manner to save himself and his son. Defendant testified that (1) he was being followed by a car with tinted black windows, which caused him to turn around to go the other way; (2) he saw a man holding a gun, but did not see the badge; (3) he did not recognize either Wilder or Henley, they looked like unsavory individuals, and Wilder was holding the gun and shaking; (4) he did not hear Wilder yell "police" because he had music playing loudly; and (5) he never saw Wilder's badge, and he never saw Henley. Defendant further testified that he drove off due to fear for his and his son's lives. He claimed he was afraid that if he tried to turn down the radio, the persons pursuing him might shoot if he started reaching under the dash.

**{16}** At trial, Defendant requested two instructions modeled after UJI 14-2216 NMRA, which is the mistake-of-fact instruction for crimes against law enforcement officers. *See Nozie*, 2009-NMSC-018, ¶ 33. On the aggravated assault upon a peace officer charge, Defendant requested the following instruction:

> Evidence has been presented that [D]efendant did not know that Agent Richard Henley was a peace officer.

> The burden is on the state to prove beyond a reasonable doubt that [D]efendant knew that Agent Richard Henley was a peace officer. If you have a reasonable doubt as to whether [D]efendant knew that Agent Richard Henley was a peace officer, you must find [D]efendant not guilty of the crime of aggravated assault on a peace officer with a deadly weapon.[]

> A "peace officer" is any . . . public [official] or public officer vested by law with a duty to maintain public order or to make arrests for [a] crime, whether that duty extends to all crimes or is limited to specific crimes.

**{17}** On the resisting, evading, and obstructing an officer charge, Defendant requested the following:

4

Evidence has been presented that [D]efendant did not know that Sgt. Lee Wilder was a peace officer.

The burden is on the [S]tate to prove beyond a reasonable doubt that [D]efendant knew that Sgt. Lee Wilder was a peace officer. If you have a reasonable doubt as to whether [D]efendant knew that Sgt. Lee Wilder was a peace officer, you must find [D]efendant not guilty of the crime of resisting[,] evading[,] or obstructing an officer.

A "peace officer" is any public official or public officer vested by law with a duty to maintain public order or to make arrests for [a] crime, whether that duty extends to all crimes or is limited to specific crimes.

The district court refused these instructions. On the resisting, evading, and obstructing an officer charge, the district court instructed the jury in accordance with the elements set forth in Section 30-22-1(D), which require the State to prove beyond a reasonable doubt that

1. Richard Henley and/or Lee Wilder were peace officers in the lawful discharge of their duties;

2. . . . Defendant resisted or abused Richard Henley and/or Lee Wilder while in the lawful discharge of their duties;

3. . . . Defendant did not act in self[-]defense.

*See id.*; UJI 14-2215 NMRA. Defendant contends that the instructions given erroneously failed to require the State to prove Defendant's knowledge that the agents were law enforcement officers.

**Preservation**

{18}    The State claims that Defendant failed to preserve this issue. It argues that even though Defendant requested an instruction requiring the State to prove that Defendant knew the persons pursuing him were law enforcement officers, the issue was not adequately preserved because Defendant did not object when the district court refused his requested instruction and decided to only issue one instruction patterned after UJI 14-2216. We disagree.

{19}    The record reveals an extensive discussion on jury instructions with the district court acknowledging that Defendant was presenting a defense to both charges based on his claim that he did not know the agents were police officers. Our review of the record indicates that the district court recognized that lack of knowledge is one of the cornerstone issues of the case, and based upon the defense of lack of knowledge, the court opined that UJI 14-2216 was appropriate.

{20}    Addressing Defendant's requested instruction requiring the State to prove his

5

knowledge of the officer's status for purposes of the aggravated assault on a peace officer charge, the district court indicated its concern that the requested instruction did not include the step-down portion set forth in the uniform jury instruction. *See* UJI 14-2216. Defendant explained that he believed the step-down language was unnecessary, but the district court opted to give the State's requested instruction patterned after UJI 14-2216 on the aggravated assault charge. However, it refused to give a similar instruction on the resisting, evading, and obstructing charge, which it found to be merely directed at a different officer. Defendant did not state an objection to the district court's ruling.

**{21}** The purpose of the preservation requirement is "to alert the trial court to the defendant's argument." *State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537 (filed 2005). Defendant's request of an instruction patterned after UJI 14-2216 for purposes of the resisting, evading, and obstructing charge was sufficient to alert the district court to his argument. *See State v. Hill*, 2001-NMCA-094, ¶ 7, 131 N.M. 195, 34 P.3d 139 (holding that an issue is adequately preserved if the district court is generally aware of the issue and the record reflects that the court clearly understood the type of instruction requested by the defendant). Because the record demonstrates that the district court understood Defendant's argument, Defendant did not need to object to the district court's refusal to give his tendered instruction. Moreover, we are not persuaded that Defendant's failure to point to a case requiring an instruction similar to UJI 14-2216 in a charge for resisting, evading, or obstructing an officer warrants a conclusion that he failed to preserve this issue because this issue appears to be one of first impression, and thus there are no New Mexico cases considering this issue.

**{22}** Finally, to whatever extent Defendant's requested instruction did not comport with UJI 14-2216 because it did not include step-down language, this exclusion does not warrant a finding that Defendant failed to preserve the issue. *See* Rule 5-608(D) NMRA (requiring the submission of a correct written instruction prior to the instruction of the jury); *cf. Jernigan*, 2006-NMSC-003, ¶¶ 9-15 (holding that an issue was preserved by an incorrect tendered jury instruction when the record indicated that the district court understood the type of instruction that was wanted and that the tendered jury instruction would need to be modified). Step-down provisions in the context of a charge of aggravated assault upon a peace officer are based on the rationale that assaulting a private person is still a crime. *Cf. State v. Nozie*, 2007-NMCA-131, ¶ 4, 142 N.M. 626, 168 P.3d 756 (recognizing that an assault or battery against a peace officer necessarily includes an assault or battery of another person, and, thus, "if the jury has a reasonable doubt as to whether the defendant knew the victim was a peace officer," it must "consider the parallel lesser-included offense not involving a peace officer as the victim"), *aff'd*, 2009-NMSC-018. However, if a defendant is unaware that the person attempting to restrain the defendant is a peace officer, the defendant commits no crime by resisting the attempt because it is not illegal to resist, evade, or obstruct a private citizen. Therefore, Defendant's requested instruction was sufficient to preserve this issue for appeal because it alerted the district court to his argument that he was asserting a defense of lack of knowledge and that he was claiming there was no need for step-down language in the requested instruction. *See Jernigan*, 2006-NMSC-003, ¶ 10 ("[I]f the record reflects that the judge clearly understood the type of instruction the [d]efendant wanted and understood the tendered instruction needed to be modified to correctly state the

6

law, then the issue is deemed preserved for appellate review.").

**Propriety of the Jury Instruction**

**{23}** Turning to the merits, the Use Notes for the Uniform Jury Instruction on resisting, evading, and obstructing an officer require the inclusion of UJI 14-2216 whenever there is a question of fact as to whether the defendant knew that the victim was a law enforcement officer. *See* UJI 14-2215 Use Note 3. Yet, review of the jury instructions given in this case, taken as a whole, fails to reveal any instruction requiring the jury to find that the State proved that Defendant knew Henley and Wilder were peace officers before convicting Defendant of the resisting, evading, and obstructing charge. Apparently, the district court did not believe this instruction was necessary for the resisting, evading, and obstructing charge because an instruction in conformance with UJI 14-2216 was only given for purposes of aggravated assault on a different officer.

**{24}** With respect to the aggravated assault charge, in accordance with the instruction requested by the State, the jury was instructed, in part:

> Evidence has been presented that . . . Defendant did not know that Richard Henley was a peace officer.
>
> The burden is on the State to prove beyond a reasonable doubt that . . . Defendant knew that Richard Henley was a peace officer. If you have a reasonable doubt as to whether . . . Defendant knew that Richard Henley was a peace officer, you must find . . . Defendant not guilty of the crime of aggravated assault of a peace officer (deadly weapon).
>
> . . . .
>
> If after reasonable deliberation, you do not agree that . . . Defendant is guilty of aggravated assault of a peace officer (deadly weapon), you should move to a discussion of aggravated assault (deadly weapon). If you unanimously agree that . . . Defendant is guilty of aggravated assault (deadly weapon), you will return a verdict of guilty of aggravated assault (deadly weapon).
>
> . . . .
>
> A "peace officer" is any public official or public officer vested by law with a duty to maintain public order or to make arrests for [a] crime, whether that duty extends to all crimes or is limited to specific crimes.

**{25}** As stated above, the resisting, evading, and obstructing instruction only required the jury to find (1) that "Henley and/or . . . Wilder were peace officers in the lawful discharge of their duties," (2) that "Defendant resisted or abused . . . Henley and/or . . . Wilder while in the lawful discharge of their duties," and (3) that "Defendant did not act in self[-]defense."

7

Additionally, the jury was instructed that "[e]ach crime charged in the indictment should be considered separately." The aggravated assault instruction, however, does not discuss Wilder or the resisting, evading, and obstructing charge. We determine, therefore, that the instruction does not adequately inform the jury that in order to convict Defendant of resisting, evading, and obstructing, it must find that Defendant knew Wilder was a peace officer. *See* UJI 14-2215 Use Note 3; *cf. State v. Nieto*, 2000-NMSC-031, ¶ 15, 129 N.M. 688, 12 P.3d 442 (recognizing that the district court need not give an instruction on an element of a crime if it is adequately defined in other instructions given). The instruction given regarding Defendant's alleged knowledge that the victim was a peace officer specifically pertains to Henley, whereas the resisting charge names both Henley and Wilder. Furthermore, as the State admits, the instruction is specifically directed at the crime of aggravated assault upon a peace officer and contains step-down language that is only applicable to the aggravated assault charge. Therefore, the jury could have been confused or misled as to whether it was necessary for the State to prove that Defendant knew the persons pursuing him were officers in order to convict him of the resisting, evading, and obstructing charge. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (stating that, when reviewing the adequacy of jury instructions, we determine "whether a reasonable juror would have been confused or misdirected by the jury instruction" (internal quotation marks and citation omitted)).

**{26}**     Although there are no previous appellate cases in New Mexico mandating that an instruction patterned after UJI 14-2216 be given in a trial on resisting, evading, and obstructing an officer, we are guided by our precedent addressing other crimes perpetrated against peace officers. For example, in a plurality opinion in *Reese v. State*, 106 N.M. 498, 499-501, 745 P.2d 1146, 1147-48 (1987), our Supreme Court held that a defendant was entitled to an instruction requiring the jury to find that he knew his victim was a peace officer in order to convict him of assault and battery upon a peace officer because knowledge of the victim's identity is a necessary element of those crimes, and the defendant had introduced some evidence as to his lack of knowledge. *See State v. Ellis*, 2008-NMSC-032, ¶ 17 n.1, 144 N.M. 253, 186 P.3d 245 (citing to the opinion in *Reese* with approval and construing it to hold that "with respect to aggravated assault on a peace officer, . . . a defendant's knowledge about the identity of an officer is an element of the crime that the [s]tate is required to prove beyond a reasonable doubt").

**{27}**     Recently, in *Nozie*, our Supreme Court held that the state must prove beyond a reasonable doubt that the defendant knew that his victim was a peace officer because this knowledge is an essential element of the crime of aggravated battery upon a peace officer. 2009-NMSC-018, ¶¶ 17-32 (clarifying the holding in *Reese* and specifically stating that knowledge of the victim's identity as a peace officer is an essential element of the crimes of aggravated assault, aggravated battery, and battery upon a peace officer). Given that knowledge is an essential element, our Supreme Court held that the uniform jury instructions defining aggravated battery upon a peace officer, aggravated assault upon a peace officer, and battery upon a peace officer must be amended to include the defendant's knowledge that the victim was a peace officer by including the phrase, "Defendant knew _____ (name of peace officer) was a peace officer." *Id.* ¶ 31 (emphasis omitted) (internal quotation marks omitted).

8

**{28}** After holding that the elements instructions must be amended to include the defendant's knowledge of the officer's status, the Court declined to consider whether, once those changes have been made, there will still be a need for UJI 14-2216 in future cases or whether, at that point, the mistake-of-fact instruction will become surplusage. *Nozie*, 2009-NMSC-018, ¶¶ 33-36. However, given that the instruction tendered on aggravated battery upon a peace officer in the case before it did not include the essential element of knowledge, the Court held that the jury should have been given a mistake-of-fact instruction consistent with UJI 14-2216 as to the victim's identity as a peace officer. *Nozie*, 2009-NMSC-018, ¶¶ 34-35.

**{29}** Even though *Nozie* concerns aggravated battery upon a peace officer, and even though resisting, evading, and obstructing an officer is not directly considered in *Nozie*, the rationale expressed by our Supreme Court applies equally to the crime of resisting, evading, and obstructing an officer, and thus a mistake-of-fact instruction should have been given. *See id.* ¶ 30 (noting that all of the offenses codified under Chapter 30, Article 22 of our statutes, entitled "Interference with Law Enforcement," are "intended to achieve the same fundamental purpose: protect peace officers in the lawful discharge of their duties from unlawful assaults and batteries" and thus include the element of knowledge of the victim's identity); *cf. Nozie*, 2007-NMCA-131, ¶ 3 (recognizing that UJI 14-2216 was promulgated without limitation to any specific offense).

**{30}** Based upon the foregoing, Defendant was entitled to a mistake-of-fact instruction patterned after UJI 14-2216 to inform the jury that, in order to convict Defendant of resisting, evading, and obstructing a peace officer, the State had the burden to prove that Defendant knew Henley and Wilder were peace officers, and the instruction given on aggravated assault was not sufficiently applicable to both crimes. *Cf. Nieto*, 2000-NMSC-031, ¶ 15.

## SUFFICIENCY OF THE EVIDENCE

**{31}** As this issue would give Defendant greater relief, we also address his claim that there was insufficient evidence to support his conviction for resisting, evading, and obstructing an officer. Defendant was convicted pursuant to Section 30-22-1(B), which defines the offense as "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him." The State concedes that the statute requires it to prove that "an officer was a peace officer engaged in the lawful discharge of his duty and that the defendant, with knowledge that the officer was attempting to apprehend or arrest him, fled, attempted to evade, or evaded the officer." *See* § 30-22-1(B); *State v. Gutierrez*, 2007-NMSC-033, ¶ 27, 142 N.M. 1, 162 P.3d 156. However, in this case, the State requested, and the district court gave, an instruction based on Section 30-22-1(D), which required the State to prove beyond a reasonable doubt that (1) the officers were "peace officers in the lawful discharge of their duties," (2) "Defendant resisted or abused Richard Henley and/or Lee Wilder while in the lawful discharge of their duties," and (3) Defendant "did not act in self[-] defense."

9

**{32}** In a case such as this one in which an erroneous instruction was apparently given, we nonetheless review the sufficiency of the evidence under the instructions as given. *See State v. Rosaire*, 1996-NMCA-115, ¶ 20, 123 N.M. 250, 939 P.2d 597 (holding that, when the district court fails "to instruct the jury on an essential element of the crime, retrial following appeal is not barred if the evidence below was sufficient to convict the defendant under the erroneous jury instruction"), *aff'd*, 1997-NMSC-034, 123 N.M. 701, 945 P.2d 66. In analyzing a sufficiency challenge on appeal, we view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994). We do not weigh the evidence or substitute our judgment for that of the factfinder. *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, __ N.M. __, __ P.3d __. The jury is free to reject Defendant's version of the facts. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). We do not consider the merit of evidence that may have supported a different result. *State v. Kersey*, 120 N.M. 517, 520, 903 P.2d 828, 831 (1995).

**{33}** Defendant contends that the evidence was insufficient to establish that he had the requisite knowledge that Wilder and Henley were peace officers who were trying to arrest or apprehend him. He claims the jury could not disregard his testimony establishing that he did not know the agents were officers, he never saw the badge or heard Wilder identify himself as an officer, and he feared Henley and Wilder were private persons attempting to harm him. We understand Defendant to argue that this lack of knowledge as to the officers' identities must warrant a conclusion that the State failed to prove that Defendant was not acting in self-defense or that it negates the State's attempt to prove that Defendant abused or resisted the officers while they were in lawful discharge of their duties. We disagree.

**{34}** Although Defendant testified to his lack of knowledge, as previously discussed, Wilder testified that he shouted five or six times that he was a police officer and that he showed his badge. He continued to show his badge even after Defendant began driving toward him and while ordering Defendant to exit from the truck. Henley also testified that he told Defendant he was a police officer and displayed his badge. Furthermore, Henley testified, contrary to Defendant's testimony, that no loud music was playing, and Wilder testified that Defendant apparently heard him when he was much further away, so it seemed unlikely he could not hear him identify himself as a police officer as Defendant approached Wilder's vehicle and got much closer.

**{35}** The testimony of Wilder and Henley is sufficient for the jury to conclude that Defendant knew the officers were trying to arrest or detain him. *See State v. Caudillo*, 2003-NMCA-042, ¶ 7, 133 N.M. 468, 64 P.3d 495 (filed 2002) (holding that, on appeal, the question is whether substantial evidence supports the verdict, not whether substantial evidence would have also supported acquittal); *cf. Gutierrez*, 2007-NMSC-033, ¶ 36 (holding that the jury could infer that a defendant knew of an officer's status and purpose from evidence that the officer approached the defendant in an authoritative manner with insignia of office clearly displayed, the officer indicated that he needed to talk to the defendant, and the officer subsequently chased the defendant when he failed to stop). Moreover, the jury was entitled to believe the officers' testimony despite Defendant's

10

protestations to the contrary. *See State v. Sosa*, 2000-NMSC-036, ¶ 8, 129 N.M. 767, 14 P.3d 32 (stating that it is the jury's function to assess witnesses' credibility, and we defer to their decision on such matters); *State v. Riggs*, 114 N.M. 358, 362-63, 838 P.2d 975, 979-80 (1992) (stating that the jury determines questions of credibility and the weight to be given to evidence).

## REASONABLENESS OF THE INITIAL STOP

**{36}** Finally, Defendant contends that Wilder and Henley did not possess sufficient facts to warrant detaining Defendant at the time of the seizure. He notes that the quantity of cold medicine purchased by his son was "in a quantity so unremarkable" that the record fails to quantify it as either unusually large or suspicious. Defendant then claims that "the only other information from which the officers could have formed reasonable suspicion was an unsupported hunch" of the store clerk who suspected Kevin had been shoplifting. He concludes that the agents' unsupported suspicion of methamphetamine manufacture was not enough to warrant the stop and detention.

**{37}** The State responds that this issue was not preserved because it was not raised in district court, and we agree. Defendant failed to specifically challenge the initial detention by filing a motion to suppress or by questioning the reasonableness of the initial detention during trial. *Cf. State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (noting that, in order to preserve an issue for appeal, the defendant must specifically apprise the district court of the nature of the claimed error and invoke an intelligent ruling thereon). Moreover, although Defendant's brief in chief cites numerous places in the record where Defendant elicited testimony regarding the officers' purported reasons for investigating him, he fails to inform this Court as to when and how he invoked a ruling on whether the seizure should have been suppressed because the officers were not justified in detaining him. Therefore, we decline to address Defendant's argument that the initial detention was illegal for lack of preservation. *See generally Rojo*, 1999-NMSC-001, ¶ 44 (stating that the Court will not search the record to find whether an issue was preserved when the defendant did not refer the Court to appropriate transcript references).

**{38}** To the extent we interpret Defendant's argument as an assertion that there was insufficient evidence to support his conviction because the officers were not justified in attempting to detain him, we are unpersuaded. *See generally Gutierrez*, 2007-NMSC-033, ¶¶ 31-32 (noting that "a person who walks away from an officer attempting to detain that person based on reasonable suspicion can be charged with evading and eluding an officer under Section 30-22-1(B)," but that the officer must have reasonable suspicion to have the legal authority to detain the defendant). Reasonable suspicion must exist at the inception of the stop and cannot be based on facts that arise as a result of the encounter. *See State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856; *State v. Williams*, 2006-NMCA-062, ¶ 22, 139 N.M. 578, 136 P.3d 579. Unsupported hunches and intuition are insufficient. *Williams*, 2006-NMCA-062, ¶ 25. "A reasonable suspicion of criminal activity can arise from wholly lawful conduct." *State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted).

11

**{39}** Even in the absence of reasonable suspicion, the officers were entitled to follow Defendant and Kevin once they saw Kevin purchase the cold medicine. *See State v. Walters*, 1997-NMCA-013, ¶ 15, 123 N.M. 88, 934 P.2d 282 (filed 1996) (holding that the defendant was not seized as a consequence of being followed by an officer). Moreover, the officers were entitled to identify themselves and attempt to get Defendant to answer some questions although Defendant may have initially had the right to ignore their requests for him to stop. *Cf. Jason L.*, 2000-NMSC-018, ¶¶ 14-21 (recognizing that, while officers could approach the defendant to question him, they had no right to stop and detain, or seize, him in the absence of a reasonable suspicion that he was involved in criminal activity). Again, we review the evidence in the light most favorable to the verdict. *Apodaca*, 118 N.M. at 765-66, 887 P.2d at 759-60.

**{40}** While Wilder, Henley, and Anderson were following Defendant, circumstances evolved justifying the agents' suspicion to detain and then to arrest Defendant. Defendant pulled off the road and turned his truck around so that it was facing Wilder's vehicle. He then refused to respond and refused to show his hands when Wilder identified himself as an officer and indicated that he wanted to speak with Defendant. While Wilder continued to attempt to question Defendant, Defendant began to drive forward toward where Wilder was standing in his vehicle. Defendant continued to refuse to show his hands, and Wilder noticed that a gun was missing from the rack in the rear of Defendant's truck. At this point, Wilder was justified in detaining Defendant, and when Defendant refused to submit to his authority, Wilder was justified in attempting to place him under arrest. *See Gutierrez*, 2007-NMSC-033, ¶ 35 (recognizing that the defendant may have had the right to not answer the officer's questions, "but he did not have the right to walk away immediately"); *State v. Maez*, 2009-NMCA-108, ¶¶ 5, 16-23, 147 N.M. 91, 217 P.3d 104 (holding that officers had reasonable suspicion to stop and detain the defendant based upon the defendant's actions in running away from the officer and continuing to run even after the officer identified himself by yelling loudly "[p]olice, stop" when the defendant was no more than forty-five to fifty feet from the officer, and the defendant's actions in continuing to approach even after the officer told him to stop and get on the ground), *cert. denied*, 2009-NMCERT-008, 147 N.M. 395, 223 P.3d 940; *cf. State v. Harbison*, 2007-NMSC-016, ¶¶ 17-22, 141 N.M. 392, 156 P.3d 30 (noting the United States Supreme Court's observation that headlong flight "is not necessarily indicative of wrongdoing, but it is certainly suggestive of such" and holding that "unprovoked flight upon noticing the police" can create reasonable suspicion) (internal quotation marks and citations omitted)); *State v. Jacobs*, 2000-NMSC-026, ¶ 15, 129 N.M. 448, 10 P.3d 127 (recognizing that evidence of flight is relevant and admissible because it tends to show a consciousness of guilt). Therefore, we reject Defendant's argument that he was illegally detained.

**CONCLUSION**

**{41}** For the foregoing reasons, we reverse Defendant's conviction and remand for further proceedings in accordance with this opinion.

**{42}   IT IS SO ORDERED.**

12

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**


_____
**ROBERT E. ROBLES, Judge**


_____
**LINDA M. VANZI, Judge**


**Topic Index for *State v. Akers*, Docket No. 28,674**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-EL | Elements of Offense |
| CL-RA | Resisting Arrest |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-EO | Elements of Offense |
| CA-JI | Jury Instructions |
| CA-PO | Peace Officer |
| CA-RS | Reasonable Suspicion |
| CA-SE | Substantial or Sufficient Evidence |
| | |
| **JI** | **JURY INSTRUCTIONS** |
| JI-CJ | Criminal Jury Instructions |
| JI-IJ | Improper Jury Instructions |