STATE V. DAVIS

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**WESLEY DAVIS,**
**Defendant-Appellant.**

Docket No. A-1-CA-37761
COURT OF APPEALS OF NEW MEXICO
April 15, 2019

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY, Angie K. Schneider, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM for Appellee

Bennett J. Baur, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM for Appellant.

**JUDGES**

J. MILES HANISEE, Judge. WE CONCUR:  M. MONICA ZAMORA, Chief Judge, JENNIFER L. ATTREP, Judge

**AUTHOR:** J. MILES HANISEE

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}**	Defendant appeals his conviction for driving while under the influence of intoxicating liquor (DWI). We issued a notice of proposed summary disposition proposing to affirm, and Defendant has responded with a memorandum in opposition. We have considered Defendant's arguments and remain unpersuaded that our initial proposed disposition was incorrect. We therefore affirm.

**{2}** Defendant continues to argue that the evidence was insufficient to support his conviction for aggravated DWI. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). We view the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "We will not substitute our judgment for that of the factfinder, nor will we reweigh the evidence." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344.

**{3}** In order to convict Defendant of aggravated DWI, the State was required to prove: (1) Defendant operated a motor vehicle, (2) "[a]t that time [D]efendant was under the influence of intoxicating liquor; that is, as a result of drinking liquor [D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public[,]" and (3) "[D]efendant refused to submit to chemical testing[.]" [RP 139] *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."). Defendant challenges both the sufficiency of the evidence to establish impaired driving and the sufficiency of the evidence to show that he refused to submit to chemical testing. *See* NMSA 1978, § 66-8-102(D)(3) (2016) (stating that aggravated driving under the influence consists of refusing to submit to chemical testing, as provided for in the Implied Consent Act while in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs); § 66-8-102(B) (stating that is unlawful for a person who is under the influence of any drug to a degree that renders the person incapable of safely driving a vehicle to drive a vehicle within this state).

**{4}** At trial, Officer Marc Davis testified that he observed Defendant passing another vehicle, driving 52 mph in a 35 mph zone. [RP 256] When Officer Davis made contact with Defendant, he noticed the odor of alcohol and asked Defendant if he had anything to drink. Defendant responded that his passenger had been drinking. [RP 257] When Officer Davis then had Defendant step out of the vehicle to separate him from the passenger, Defendant swayed as he walked. [RP 257] Officer Davis testified that he still noticed the odor of an alcoholic beverage coming from Defendant, even though Defendant was by now separated from the passenger. [RP 257] Officer Davis then informed Defendant that he would perform field sobriety tests (FSTs), utilizing alternate tests to accommodate Defendant's comfort level and the fact that he was wearing house shoes. [RP 257] Officer Davis testified that Defendant was unable to complete the finger count test and was unable to recite the alphabet from D to Z without skipping letters. [RP 257-258] Defendant was also unable to follow instructions during the HGN test and swayed while standing. [RP 258]

**{5}** Officer Davis then arrested Defendant for DUI and again asked him if he had anything to drink. This time Defendant admitted to having drunk "a couple." [RP 258]

Officer Davis read Defendant the relevant portions of the Implied Consent Act, and Defendant refused to submit to a chemical test. [RP 258] This evidence is sufficient to support Defendant's conviction for aggravated DWI. *See State v. Loya*, 2011-NMCA-077, ¶¶ 18-20, 150 N.M. 373, 258 P.3d 1165 (holding that sufficient evidence supported a conviction for aggravated DUI where the defendant drove with bloodshot, watery eyes, had slurred speech and an odor of alcohol, the defendant admitted to drinking, and the defendant refused to submit to chemical testing after being read the Implied Consent Act); *see also State v. Sanchez*, 2001-NMCA-109, ¶ 9, 131 N.M. 355, 36 P.3d 446 ("The [s]tate can use evidence of a driver's refusal to consent to the field sobriety testing to create an inference of the driver's consciousness of guilt.").

**{6}** In his memorandum in opposition, Defendant argues that there was no evidence that the manner of his driving showed impairment or that he had bloodshot, watery eyes or slurred speech. [MIO 5-7] Defendant points out that he was able to provide Officer Davis with his license and registration without apparent difficulty. [MIO 7] Defendant also argues that his performance on the alternative FSTs was due to his disability and that Officer Davis never asked him whether he suffered from mental or physical disabilities that would affect his performance. [MIO 6-7]

**{7}** We view this as an argument that the jury improperly weighed the evidence, which we do not consider on appeal. *See State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (stating that the appellate courts "do not search for inferences supporting a contrary verdict or re-weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury" (internal quotation marks and citation omitted)); *see also State v. Akers*, 2010-NMCA-103, ¶ 32, 149 N.M. 53, 243 P.3d 757 ("We do not weigh the evidence or substitute our judgment for that of the factfinder."). For the reasons described above, the evidence was sufficient to allow the jury to infer that Defendant was impaired to the slightest degree when he operated the motor vehicle.

**{8}** Defendant also continues to argue that the evidence was insufficient to show that he willfully refused to submit to chemical testing. [MIO 8-10] Defendant points to his testimony that he asked for an independent chemical test in lieu of the government administered test. [MIO 8] However, our review of the record indicates that Sergeant Davis testified that, after he read Defendant the Implied Consent Act, Defendant refused to submit to testing. [RP 258, 260] This is sufficient to prove that Defendant refused to submit to chemical testing, as the jury was not required to believe Defendant's version of events. *See State v. Stefani*, 2006-NMCA-073, ¶ 39, 139 N.M. 719, 137 P.3d 659 (noting that the jury is free to reject the defendant's theory of the case); *see also State v. Delgado*, 2010-NMCA-078, ¶ 6, 148 N.M. 870, 242 P.3d 437 ("It is for the jury to resolve the conflicts in the evidence."). We further note that, although a defendant has the right to be afforded an opportunity to an independent test, that right is not triggered until the defendant first submits to the State administered test. *See State v. Smith*, 2019-NMCA-027, ¶ 8, 458 P.3d 613 (recognizing that, under the plain language of Section 66-8-109(B), a defendant's right to arrange for independent chemical testing is triggered only if she first submits to the test police ask her to take).

**CONCLUSION**

{9}     For these reasons, we affirm Defendant's conviction.

{10}    IT IS SO ORDERED.

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**JENNIFER L. ATTREP, Judge**