This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37628**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RUDOLFO A. MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John C. Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant appeals his conviction for second degree murder. We issued a notice of proposed summary disposition proposing to affirm, and Defendant has responded with a timely memorandum in opposition and motion to amend the docketing statement, which we have duly considered. We remain unpersuaded that our initial proposed disposition was incorrect. For the reasons that follow, we deny Defendant's motion to amend the docketing statement and affirm his conviction.

**{2}** Defendant first continues to argue that the evidence was insufficient to sustain his conviction. [MIO 8-9] "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944 (internal quotation marks and citation omitted). "Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." *State v. Huerta-Castro*, 2017-NMCA-026, ¶ 24, 390 P.3d 185. "This Court evaluates the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344.

**{3}** In order to convict Defendant of second degree murder, the State was required to prove beyond a reasonable doubt that: (1) "[D]efendant killed Christopher Wray;" (2) "[D]efendant knew that his acts created a strong probability of death or great bodily harm to Christopher Wray or any other human being;" (3) "[D]efendant did not act as a result of sufficient provocation;" and (4) "[D]efendant did not act in self defense." [RP 212] UJI 14-210 NMRA; NMSA 1978, §30-2-1(B) (1994); *see State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (stating that "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured" (alteration, internal quotation marks, and citation omitted).

**{4}** Defendant challenges only the sufficiency of the evidence to show that he did not act as a result of sufficient provocation, and we therefore confine our analysis to that issue. [MIO 8-9]

**{5}** Sufficient provocation is defined as:

> any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition. The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

[RP 216] *See also* UJI 14-222 NMRA. In his memorandum in opposition, Defendant argues that this Court is required to review the entirety of the trial evidence in order to make a determination as to whether the evidence established sufficient provocation and the adequacy of any cooling off period. [MIO 8-9] However, as we noted in our notice of proposed summary disposition, it is generally for the jury to decide whether any given act, condition, or circumstance could objectively be said to constitute sufficient provocation. *See State v. Stills*, 1998-NMSC-009, ¶¶ 36-37, 125 N.M. 66, 957 P.2d 51 (holding that the fact-finder must determine whether "an ordinary person of average disposition" in the same situation would have been provoked); *State v. Taylor*, 2000-NMCA-072, ¶ 28, 129 N.M. 376, 8 P.3d 863 (holding that "[t]he question of whether the

circumstances rose to the level of provocation to reduce second degree murder to voluntary manslaughter was for the fact[-]finder to resolve"). Defendant's request that we review the evidence to determine whether adequate provocation was established is an invitation to substitute our judgment for that of the jury, which we will not do on appeal. *See State v. Akers*, 2010-NMCA-103, ¶ 32, 149 N.M. 53, 243 P.3d 757 ("We do not weigh the evidence or substitute our judgment for that of the fact[-]finder.").

**{6}** Defendant received his requested instructions on voluntary manslaughter and self-defense, and the jury was provided with the applicable definition of "sufficient provocation." [RP 216-218] The jury viewed the video recording of the incident and heard the testimony of the eyewitnesses. [DS 3-4] Defendant was also able to testify and present his version of events to the jury. [RP 215-216] Under these circumstances, we see no basis on which to reverse Defendant's conviction, as the jury was free to disregard Defendant's evidence regarding provocation and come to its own judgment on the issue based on the evidence before it. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (stating that the jury is free to reject the defendant's version of events); *see also State v. Hughey*, 2007-NMSC-036, ¶ 16, 142 N.M. 83, 163 P.3d 470 ("It is the role of the fact[-]finder to judge the credibility of witnesses and determine the weight of evidence."). We therefore reject this assertion of error and affirm.

**{7}** Defendant next argues, pursuant to a motion to amend the docketing statement, that he was denied his right to a speedy trial. *See* Rule 12-208(F) NMRA. [MIO 10-13] Defendant preserved this issue by filing a motion to dismiss on speedy trial grounds in the district court. [RP 98-101]

**{8}** In determining whether a defendant has been denied his right to a speedy trial, we analyze the four factors set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. In considering each of the *Barker* factors, we defer to the district court's factual findings. *See State v. Parrish*, 2011-NMCA-033, ¶ 10, 149 N.M. 506, 252 P.3d 730. However, we review de novo the question of whether Defendant's constitutional right to a speedy trial was violated. *See id*.

**{9}** We first must determine whether the length of delay is presumptively prejudicial—if it is, then a speedy trial analysis is warranted. *See Serros*, 2016-NMSC-008, ¶ 22 (noting that length of delay, the first factor in speedy trial analysis, "acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being 'presumptively prejudicial,' and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred"). A delay is presumptively prejudicial if it extends beyond one year for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. *State v. Garza*, 2009-NMSC-038, ¶ 2, 146 N.M. 499, 212 P.3d 387.

**{10}**    The record indicates that Defendant was arrested on the charges on July 6, 2016. [RP 106] *See Parrish*, 2011-NMCA-033, ¶ 20 (stating that the right to speedy trial attaches when the defendant becomes an accused, either by the filing of a formal indictment or arrest and holding to answer). Defendant filed his motion to dismiss on speedy trial grounds on November 27, 2017, and the district court entered its order denying the motion on December 13, 2017. [RP 98, 116] Trial in this matter commenced on March 19, 2018. [RP 117]

**{11}**    We first observe that Defendant did not make an argument in his motion to dismiss regarding the complexity of the case. [RP 101] In its response to the motion, filed on December 7, 2017 [RP 106]; however, the State argued that the case was a complex one, due to the number of anticipated witnesses and the need for expert testimony involving DNA analysis. [RP 108] Accordingly, the State argued that the presumptively prejudicial period was eighteen months, and only seventeen months had elapsed at that time. [RP 108]

**{12}**    The record does specify why the district court denied Defendant's motion to dismiss. However, because it does not appear from the district court's order that it engaged in an analysis of the *Barker* factors, we will presume that it found, as the State urged, that the case was complex, and thus, the delay was not presumptively prejudicial. *See Garza*, 2009-NMSC-038, ¶¶ 15-22 (holding "that a 'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors"). Additionally, as Defendant made no argument below regarding the level of complexity in this case, and the State's argument that the case was complex is reasonable, we will analyze the length of delay applying the guidelines for a complex case. *See State v. Coffin*, 1999-NMSC-038, ¶ 57, 128 N.M. 192, 991 P.2d 477 (recognizing that the reviewing court is free to make a determination on the issue of complexity, absent specific findings by the district court).

**{13}**    Although at the time Defendant filed his motion to dismiss the delay was not presumptively prejudicial, by the time of trial in this matter on March 19, 2018, the total length of delay was twenty months. The delay was therefore two months beyond the presumptively prejudicial period, and was thus sufficient to trigger a  *Barker* analysis.

**{14}**    However, a delay of two months beyond the presumptively prejudicial period does not weigh heavily against the State. *See State v. Montoya*, 2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820 (stating that a delay of six months beyond the presumptive period weighed only slightly against the state); *State v. Brown*, 2003-NMCA-110, ¶ 16, 134 N.M. 356, 76 P.3d 1113 (holding that a delay of three months beyond the presumptive minimum was weighed in the defendant's favor, although not heavily).

**{15}**    The New Mexico Supreme Court has held that where the first three *Barker* factors do not weigh heavily in the defendant's favor, the defendant will be required to demonstrate actual prejudice. *See Garza*, 2009-NMSC-038, ¶ 40 (providing that where the first three factors do not weigh heavily in the defendant's favor, the defendant must make a particularized showing of prejudice for the Court to conclude that the right to a

speedy trial was violated). Based on the length of delay alone, it is evident that not all of the first three *Barker* factors weigh heavily in Defendant's favor, and Defendant was therefore required to make a showing of particularized prejudice in order to establish a speedy trial violation.

**{16}** Neither Defendant's speedy trial motion to dismiss nor his motion to amend indicate whether Defendant made a showing of particularized prejudice. The speedy trial motion simply states that Defendant has been incarcerated and unable to bond out since the grand jury indictment was filed. [RP 100] The motion to amend recites the same and asserts that incarceration for a long period before trial is a "scourge," based, we understand Defendant to argue, on the general lack of recreation or rehabilitation provided in jails, the hindrance to the ability to prepare for trial, and the potential disruption to employment and family life. [MIO 12] However, Defendant has not made a particularized showing that he suffered undue anxiety or oppressive pretrial incarceration. *See Serros*, 2016-NMSC-008, ¶ 22 (recognizing that some degree of anxiety and oppression is inherent for every defendant jailed prior to trial and that we only find prejudice when a defendant makes a particularized showing that the pretrial incarceration or the anxiety is undue). "[W]ithout a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers." *Garza*, 2009-NMSC-038, ¶ 35.

**{17}** As Defendant has not established particularized prejudice, we conclude that his right to a speedy trial was not violated. *See Parrish*, 2011-NMCA-033, ¶ 36 (determining that the defendant's speedy trial right was not violated where the defendant failed to show particularized prejudice and the other three factors did not weigh heavily in his favor). Accordingly, we deny the motion to amend the docketing statement, as this issue is not viable. *See State v. Ibarra*, 1993-NMCA-040, ¶ 13, 116 N.M. 486, 864 P.2d 302 (denying the motion to amend the docketing statement where the issue the defendant sought to raise was not viable).

**CONCLUSION**

**{18}** For these reasons, we affirm Defendant's conviction.

**{19}** **IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**